United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICKY AND LORRAINE PITRE,

    Plaintiffs,

  v.

WELLS FARGO BANK, N.A. MORTGAGE
SERVICER: ALSO KNOWN AS ASC
(AMERICA'S SERVICING COMPANY);
NORTHWEST TRUSTEE SERVICES,

    Defendants.

No. C 13-00552 WHA

**ORDER GRANTING
MOTION TO DISMISS**

## INTRODUCTION

In this foreclosure action, defendants move to dismiss all of plaintiffs' claims. For the reasons stated below, the motion to dismiss is **GRANTED**.

## STATEMENT

Pro se plaintiffs Ricky and Lorraine Pitre's claims against defendants Wells Fargo Bank, N.A. Mortgage Servicer and Northwest Trustee Services arise out of an attempt to invalidate a foreclosure proceeding. To the extent the complaint is comprehensible, the following facts are alleged. In 2001, plaintiffs obtained a loan from Wells Fargo to purchase a residential property in the City of Richmond. In 2008, plaintiffs began to pay a higher monthly mortgage payment and an interest rate of 7.375 percent. In early 2012, plaintiffs were in the process of receiving a loan modification from Wells Fargo. Wells Fargo told them that in order to apply for a loan

modification, they must be three months behind in their mortgage payment.  In reliance on this statement, plaintiffs fell behind on their mortgage payments (Compl. ¶ 55).  Wells Fargo, however, gave plaintiffs the run-around and refused to grant the loan modification.  Plaintiffs twice sought a loan modification, but were turned down by Wells Fargo.  In May 2012, plaintiffs received a loan modification proposal from Wells Fargo.  It stated that no foreclosure would take place as long as plaintiffs complied with the "trial period plan" (*id*. at ¶ 59).  But, plaintiffs learned that the proposal did not comply with the Home Affordable Modification Program ("HAMP") guidelines.  It is unclear if plaintiffs accepted the loan modification proposal.  Plaintiffs, however, received neither a trial period plan nor the loan modification, but continued to get the run-around from Wells Fargo even after plaintiffs continued to send paperwork (*id*. at ¶ 60).

In October 2012, Northwest Trustee Services recorded a notice of default.  Plaintiffs allege that Northwest did not record the power of attorney or the agency agreement with the notice of default (*id*. at ¶ 64).  In November 2012, plaintiffs received a foreclosure notice.  When they called Wells Fargo, the Wells Fargo representative told them that he/she could not discuss the loan modification and advised plaintiffs to consult an attorney (*id*. at ¶ 62).  Plaintiffs were never told when the trustee sale would take place.  Plaintiffs have applied for a short sale on their property.  It is unclear from the complaint's allegations whether the property has yet been sold.  According to Wells Fargo, plaintiffs owe Wells Fargo $13,425.04 in back payments as of July 13, 2012 (Opp. 1).

In February 2013, plaintiffs filed the present action against defendants.  Much of the 66-page complaint consists of general allegations about Wells Fargo's nationwide practice as a lender, with very few specific allegations to support plaintiffs' claims for relief.  Nonetheless, plaintiffs allege: (1) violation of the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA"), (2) violation of California Civil Code Section 2923.6, (3) breach of oral contract, (4) breach of written contract, (5) wrongful foreclosure, (6) negligence against Wells Fargo, (7) negligence against Northwest, (8) negligent misrepresentation, (9) fraud, and (10) violation of California Business and Professions Code

2

Section 17200. Wells Fargo then filed the instant motion to dismiss for failure to state a claim, to which Northwest filed a motion for joinder.

On May 16, 2013, a hearing on the present motion was held. At oral argument, plaintiff Ricky Pitre disputed that Wells Fargo had proposed a loan modification. The undersigned judge read aloud paragraph 59 of the complaint which states: "Pursuant to his request Plaintiff received a loan modification proposal from Wells Fargo in May 2012."

## ANALYSIS

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendant is liable for the conduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations marks omitted)). A pro se pleading must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**1.   ADEQUACY OF FEDERAL LAW CLAIMS.**

**A.   RESPA.**

Plaintiffs allege that defendants violated RESPA by not responding to their qualified written request. RESPA, 12 U.S.C. 2605, governs claims regarding written requests. Section 2605(e)(1) specifically requires servicers of federally related mortgage loans to respond to qualified written requests from borrowers seeking information relating to loan servicing. RESPA defines a "qualified written request" as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that —
>
> (i)   includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii)  includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

3

1    12 U.S.C. 2605(e)(1)(B).  If the servicer fails to respond properly to such a request, the statute
2    entitles the borrower to recover actual damages and potential statutory damages.  12 U.S.C.
3    2605(f); *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012).  In order for this
4    claim to be valid, however, the undersigned judge has held that plaintiffs must allege sufficient
5    pecuniary damages resulting from defendants' alleged non-response to plaintiffs' written
6    request.  *Harvey G. Ottovich Revocable Living Trust Dated May 12, 2006 v. Wash. Mut., Inc.*,
7    2010 WL 3769459, at *4 (N.D. Cal. Sept. 22, 2010).  *See Allen v. United Fin. Mortg. Corp.*,
8    660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009).

9    Here, plaintiffs do not provide a copy of the letter nor does the complaint allege what
10   their letter said to determine whether plaintiffs' letter can be considered a "qualified written
11   request."  Moreover, the complaint does not allege the pecuniary damages that resulted from
12   defendants' non-response.  The motion to dismiss the RESPA claim is **GRANTED**.

13            **B.**       **TILA.**

14   TILA "requires creditors to provide borrowers with clear and accurate disclosures of
15   terms dealing with things like finance charges, annual percentage rates of interest, and the
16   borrowers rights."  *Beech v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  A lender who fails to
17   satisfy TILA's requirements may be subject to "statutory and actual damages [that are] traceable
18   to a lender's failure to make the requisite disclosures."  *Ibid*.

19   The only allegations even approximating a TILA violation is that Wells Fargo failed to
20   provide plaintiffs with full disclosure concerning the true value of the property, the risks and
21   trends of the real estate market at that time, and the credit available to plaintiffs at that time
22   (Compl. ¶ 39).  But, in the same paragraph, the complaint alleges that partial disclosure of those
23   same items *were* provided by Wells Fargo (*ibid*.).  Aside from these allegations and a mere
24   reference to TILA, plaintiffs make no factual allegations as to *how* defendants allegedly violated
25   TILA.  The motion to dismiss the TILA claim is **GRANTED**.

4

### 2. ADEQUACY OF STATE LAW CLAIMS.

#### A. Accounting.

An accounting can be either a legal remedy or an equitable claim. A request for a legal accounting must be tethered to an actionable claim. In order to state a claim for legal accounting, a complaint must allege the existence of a relationship or other circumstances appropriate to the remedy and a balance due from the defendant that can only be ascertained through an accounting. *See Brea v. McGlashan*, 3 Cal. App. 2d 454, 460 (1934).

Here, plaintiffs base their accounting claim on their RESPA claim. Because this order holds that plaintiffs fail to sufficiently plead a RESPA claim, the motion to dismiss the accounting claim is **GRANTED**.

#### B. Violation of California Civil Code Section 2923.6.

Plaintiffs allege that defendants violated California Civil Code Section 2923.6, which provides:

> (a) The legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreement is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests of all parties if it agrees to or implements a loan modification or workout plan for which both of the following apply:
>
> (1) The loan is in payment default, or payment default is reasonably foreseeable.
>
> (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.
>
> (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification is consistent with its contractual or other authority.

Section 2923.6, however, does not operate substantively to provide a private right of action. Although our court of appeals has not yet weighed in on this issue, the undersigned judge and other district courts in this circuit have found "that the legislative history, intent, and plain language of [Section] 2923.6 makes it clear that servicers are not obligated to offer loan

5

modifications to borrowers," and that Section 2923.6 does not provide a private claim for relief to borrowers. *Bulaoro v. Oro Real, Inc.*, 2011 WL 6372458, at *9 (N.D. Cal. Dec. 20, 2011).

Because the statute does not provide a private right of action, plaintiffs' claim for relief under Section 2923.6 necessarily fails. Accordingly, defendants' motion to dismiss this claim is **GRANTED** without leave to amend.

### C. Breach of Contract.

#### (1) Oral Contract.

Plaintiffs allege that Wells Fargo's representatives assured plaintiffs that the foreclosure proceedings would not continue while Wells Fargo reviewed the proposed loan modification agreement (Compl. ¶ 80). It is not clear whether these conversations took place over the phone or in person. This oral agreement, however, was allegedly breached when the foreclosure proceedings continued.

As the undersigned judge has found in previous cases, in a bilateral oral contract, a plaintiff may allege a plausible claim that he was tricked into not pursuing a remedy to stop a foreclosure on his home based on a promise that defendant would modify the loan. *See Ramirez v. Wells Fargo Bank, N.A.*, 2011 WL 1585075, at *5 (N.D. Cal. Apr. 27, 2011). To plead such a claim, however, plaintiffs must allege additional and specific facts such as how the oral agreement was made, what statements were made, and how plaintiffs relied on Wells Fargo's statements. Accordingly, the motion to dismiss the breach of oral contract claim is **GRANTED**.

#### (2) Written Contract.

As to the breach of a written contract, plaintiffs allege that Wells Fargo entered into a Servicer Participation Agreement ("SPA") with Fannie Mae in 2009 in which Wells Fargo agreed to apply the HAMP criteria to all of the loans they service, including plaintiffs' (*id*. at ¶ 83). The alleged breach occurred when Wells Fargo did not offer plaintiffs a HAMP trial period at a payment level of 31 percent of their income even though they met the HAMP criteria (*id*. at ¶ 85).

Many district courts in our circuit have determined that individual borrowers do not have standing to sue under the SPA because they are not intended third party beneficiaries of the SPA.

6

*Morales v. Chase Home Fin., LLC*, 2011 WL 1670045, at *9 (N.D. Cal. Apr. 11, 2011) (Judge Jeffrey White) (collecting cases); *Cleveland v. Aurora Loan Servs., LLC*, 2011 WL 2020565, at *4 (N.D. Cal. May 24, 2011) (Judge Phyllis Hamilton) (collecting cases).

Because there is no claim under the SPA, plaintiff's argument fails. Accordingly, the motion to dismiss the breach of written contract claim is **GRANTED** without leave to amend.

### D. Fraud-Related Claims.

#### *(1) Fraud.*

Rule 9(b) provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Our court of appeals has held that "when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Ibid.* Rule 9(b) "does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (internal citations omitted).

Plaintiffs allege that Wells Fargo told them that their home would not be foreclosed upon while the loan modification was being reviewed (Compl. ¶ 111). These statements were made by several Wells Fargo employees (*ibid.*). Wells Fargo also told plaintiffs that they did not need to worry about making their full mortgage payments while the loan modification was being processed (*id.* at ¶ 107). Plaintiffs allegedly relied on Wells Fargo's representations and left plaintiffs with no other remedies to pursue (*id.* at ¶ 113). Contrary to these representations, however, Wells Fargo scheduled a trustee's sale on two different dates without plaintiffs' knowledge (*id.* at ¶ 112) and proceeded with the foreclosure (*id.* at ¶ 107).

The allegations do not provide details of the "who, what, when, where, and how" of Wells Fargo's misconduct. Plaintiffs do not allege who told them that Wells Fargo would not begin the foreclosure process, what the statements were, when these statement were made, or

7

how plaintiffs relied on these statements. Rather, the allegations are general and conclusory. Accordingly, the motion to dismiss the fraud claim is **GRANTED**.

### *(2)    Negligent Misrepresentation.*

A negligent misrepresentation claim requires: (1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage. *Apollo Capital Fund LLC v. Roth Capital Partners*, *LLC*, 158 Cal. App. 4th 226, 243 (2007). "In contrast to fraud, negligent misrepresentation does not require knowledge of falsity." *Ibid*. While our court of appeals has not yet decided whether a misrepresentation claim is subject to Rule 9(b)'s heightened pleading requirement, judges in this district, including the undersigned judge, have determined that it does when the claim is based on fraud. *See Ramirez v. Wells Fargo Bank*, 2011 WL 1585075, at *2 (N.D. Cal. Apr. 27, 2011); *Wayne Merritt Motor Co. v. N.H. Ins. Co.*, 2012 WL 3071431, at *13 (N.D. Cal. Jul. 26, 2012) (Judge Lucy Koh); *Miller v. Sec. Life of Denver Ins. Co.*, 2012 WL 1029279, at *5–6 (N.D. Cal. Mar. 26, 2012) (Judge Phyllis Hamilton).

Plaintiffs allege the same facts as with the common law fraud claim. Likewise, however, plaintiffs do not meet the heightened specificity required by Rule 9(b). Accordingly, the motion to dismiss the negligent misrepresentation claim is **GRANTED**.

### *(3)    Violation of Section 17200.*

To state a claim for unfair competition pursuant to California Business and Professions Code Section 17200, a plaintiff must allege that a defendant engaged in an "unlawful, unfair, or fraudulent business act or practice." Here, plaintiffs focus solely on the "fraudulent" prong of the statute. Section 17200 claims that are grounded in fraud must satisfy the particularity requirements of Rule 9(b). *Vess*, 317 F.3d at 1103. Under Section 17200, a "fraudulent" practice is defined more broadly than common law fraud and only requires a showing that "members of the public are likely to be deceived." *Multimedia Patent Trust v. Microsoft Corp.*, 525 F. Supp. 2d 1200, 1217 (S.D. Cal. 2007).

8

Plaintiffs allege that defendants engaged in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, and foreclosure of residential properties (Compl. ¶ 118). Plaintiffs also provide a laundry list of the alleged fraudulent misconduct, including: "instituting improper or premature foreclosure proceedings to generate unwarranted fees . . . Executing and recording false and misleading documents . . . Acting as beneficiaries and trustees without the legal authority to do so" (*ibid.*). Plaintiffs' conclusory allegations are insufficient. As plaintiffs' other claims, they lack the "who, what, where, when, and how" that is required by Rule 9(b). Accordingly, the motion to dismiss the Section 17200 claim is **GRANTED**.

### E. Negligence.

To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of care to the plaintiff, (2) breach of that duty, (3) causation, and (4) resulting injury to the plaintiff. *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). As a general rule, under California law, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095–96 (1991). However, "liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id.* at 1096 (internal quotations and citations omitted).

The undersigned judge has previously found a duty of care where

> the complaint allege[d] that defendant went beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning the trial period plan. Contrary to defendant, this is precisely "beyond the domain of a usual money lender." Plaintiffs' allegations constititute[d] sufficient active participation to create a duty of care to plaintiffs to support a claim for negligence.

*Ansanelli v. J.P. Morgan Chase Bank. N.A.*, 2011 WL 1134451, at *11 (N.D. Cal. Mar. 28, 2011).

9

### *(1)     Claim against Wells Fargo.*

Here, plaintiffs allege that they twice attempted loan modification with Wells Fargo, but were turned down (Compl. ¶ 36). Plaintiffs further allege that they fell behind on their mortgage payment when they sought a modification from Wells Fargo, and that Wells Fargo told plaintiffs that before a loan modification could be granted, plaintiffs must be three months behind in their mortgage payments (*id*. at ¶ 55). Wells Fargo then placed the property in foreclosure proceedings (*ibid*.). Plaintiffs allege that they received a loan modification proposal from Wells Fargo, but did not receive either a trial period plan or a loan modification (*id*. at ¶ 60).

While it is possible that Wells Fargo owed a duty of care to plaintiffs because both parties communicated to consider a loan modification, plaintiffs do not allege sufficient facts to plead a claim. Plaintiffs' chronology of events is unclear, and there are insufficient facts to gather what the conversations were between plaintiffs and Wells Fargo. The breach of the duty, causation, and injury are not sufficiently pled. Accordingly, the motion to dismiss the negligence claim against Wells Fargo is **GRANTED**.

### *(2)     Claim against Northwest Trustee Services.*

Plaintiffs allege that Northwest, while not having the legal authority to act as a trustee, had a duty to exercise reasonable care and follow California law regarding foreclosures (*id*. at ¶ 102). Northwest allegedly breached its duty of care by failing to properly train and supervise its agents and employees regarding unlawful foreclosures and substitution of trustees (*id*. at ¶ 103).

Plaintiffs, however, fail to state what the legal duty is between Northwest and plaintiffs. Plaintiffs' allegation is contradictory because they state that Northwest had no legal authority, and do not cite to any authority that would establish a legal duty owed to plaintiffs by Northwest. Accordingly, the motion to dismiss the negligence claim against Northwest is **GRANTED**.

### **F.     Wrongful Foreclosure**.

Plaintiffs argue several theories for wrongful foreclosure. Each will be addressed in turn. *First*, plaintiffs argue that the foreclosure was wrongful because Wells Fargo was not the note holder or beneficiary to the note. In *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App.

4th 1149, 1152 (2011), the plaintiff argued that the defendant did not have authority to initiate the foreclosure because it was not the note holder. The California court held that "[b]y asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, [the plaintiff] is attempting to interject the courts into [California's] comprehensive nonjudicial scheme" pursuant to Civil Code Sections 2924 through 2924k. *Id*. at 1154. "Nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and [the court] see[s] no ground for implying such an action." *Id*. at 1155. "The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." *Ibid*. The allegation that Wells Fargo was not the note holder or beneficiary is not pertinent to the analysis. Accordingly, this theory fails.

*Second*, plaintiffs argue that Wells Fargo unlawfully appointed Northwest as trustee. This theory also fails because, as stated above in *Gomes*, it is not pertinent to the analysis.

*Third*, plaintiffs argue that Wells Fargo breached an agreement with plaintiffs by foreclosing instead of modifying the loan. However, as stated above, plaintiffs cannot establish that a valid oral or written contract existed. Accordingly, this argument fails.

*Fourth*, plaintiffs argue that Wells Fargo violated Civil Code Section 2924g(c)(1) by noticing a trustee sale despite having an agreement with plaintiffs not to foreclose. As stated above, plaintiffs cannot establish that there was a valid agreement. Thus, this argument fails.

*Fifth*, plaintiffs argue that Wells Fargo breached the SPA by foreclosing during the review period for plaintiffs' loan modification. As stated above, courts in our circuit have found that individual borrowers do not have standing to sue under the SPA. Accordingly, this argument fails.

*Sixth*, plaintiffs argue that Wells Fargo breached Civil Code Section 2923.5 by failing to assess plaintiffs' financial situation correctly or in good faith. Under Section 2923.5(b), "[a] notice of default . . . shall include a declaration that the mortgagee, beneficiary, or authorized

1 agent has contacted the borrower, has tried with due diligence to contact the borrower as
2 required by this section, or that no contact was required." The complaint alleges that Wells
3 Fargo did make a modification loan offer, though it is unclear if plaintiffs accepted it (Compl. ¶¶
4 54–59). This, however, demonstrates that Wells Fargo did contact the borrower prior to the
5 recorded notice of default. Accordingly, this theory fails.

S*eventh*, plaintiffs argue that Wells Fargo violated the Security First Rule. Code of Civil Procedure Section 726(a) provides: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property . . . , which action shall be in accordance with the provisions of this chapter." "The statutory scheme of which [Section 726] is a part requires a secured creditor to proceed against the security before enforcing the underlying debt." *Sec. Pac. Nat'l Bank v. Wozab*, 51 Cal. 3d 991, 999 (1990). Here, plaintiffs have failed to allege that Wells Fargo has made any attempts to enforce the debt before commencing foreclosure. Accordingly, this theory also fails.

Because these theories fail, the motion to dismiss the wrongful foreclosure claim is **GRANTED**.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**. Plaintiffs may seek leave to amend the complaint, except as to the claims for the alleged violation of California Civil Code Section 2923.6 and the breach of the SPA (for which this order is final). Plaintiffs will have until **JUNE 6, 2013** to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. Plaintiffs should plead their best case. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein, and should include as an exhibit a redline or highlighted version identifying all changes. If such motion is not filed by the deadline, this case will be closed.

**IT IS SO ORDERED.**

Dated: May 16, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12